## IN RE SUTTON.

### (No. 3,502.)

### (Submitted June 22, 1914.   Decided December 11, 1914.)

### [145 Pac. 6.]

*Attorneys—Disbarment — Procedure — Conviction of Felony—*
*Forgery—Convicts—Pardon—Effect.*

Attorneys—Conviction of Felony—Disbarment—Procedure.
  1.   Upon lodgment with the clerk of the supreme court of a certified copy of the record of an attorney's conviction for a felony, that court, under section ·6410, Revised Codes, if it appear of record that the judgment of conviction is final either by reason of his acquiescence in it or made so by affirmance on appeal, must, without notice or citation, enter judgment that his name be stricken from the roll of attorneys.
  [As to crimes and other misconduct which are causes for disbarment, see notes in 42 Am. Rep. 557; 45 Am. St. Rep. 71.]

Same—Forgery—Moral Turpitude.
  2.   The crime of forgery involves moral turpitude, within the meaning of subdivision 1, section 6393, Revised Codes, providing for the disbarment of attorneys on conviction "of a felony or misdemeanor involving moral turpitude."

Convicts—Pardon—Effect.
  3.   By applying for and obtaining a pardon, an attorney convicted of crime will be held to have acquiesced in the judgment of conviction.

Same—Unconditional and Conditional Pardon—Effect.
  4.   While an unconditional pardon may be said to have the effect of canceling the judgment of conviction for crime, thus relieving the offender of the consequences of his act, a conditional one has no such effect.

Same—Conditional Pardon—Violation of Condition—Effect.
  5.   One convicted of crime who transgresses any of the restraints placed upon him by a conditional pardon occupies the position of an escaped convict.

Same—Pardon—Acceptance—Effect.
  6.   A conditional pardon is in the nature of a deed, and must be accepted; after acceptance, all conditions which may lawfully be imposed upon the convict are binding upon him.

E. L. SUTTON, a member of the bar of Montana, was convicted of the crime of forgery, and ordered disbarred under the provisions of subdivision 1 of section 6393 and section 6410, Revised Codes.

*Mr. E. L. Sutton,* appearing *pro se,* filed a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On April 11, 1914, E. L. Sutton was tried in the district court of Chouteau county upon a charge of forgery, and by a verdict of the jury found guilty. He was thereafter by judgment of the court sentenced to a term of two years in the state prison. At the time the charge was preferred against him, and at the time of his conviction, Mr. Sutton was an attorney and counselor at law and a member of the bar of Montana. Thereafter, on May 14, the clerk of the district court, under the command of the statute (Rev. Codes, sec. 6409), lodged with the clerk of this court a certified copy of the record of conviction. When this fact was brought to its attention, this court made an order directing a citation to issue to Sutton requiring him to show cause why he should not be removed from his office. The citation was served on June 1. On June 6 Mr. Sutton filed an answer, admitting his conviction, and alleging that there was then pending in the district court an application for a new trial; that it was being prosecuted by him in good faith; and that, in the event it should be denied, he intended to prosecute an appeal to this court. He also alleged that the crime of which he was convicted does not involve moral turpitude, and therefore his conviction of it does not justify his suspension or disbarment. The court thereupon deferred disposition of the matter until the criminal prosecution could be disposed of. On September 14 Mr. Sutton filed an amended answer, in which he alleged that on August 10 the Honorable Samuel V. Stewart, the governor, transmitted to the board of pardons a pardon of the offense of which he had been convicted; that on August 28, after consideration, the board approved the governor's action; that on August 31 the governor made an executive order pardoning Mr. Sutton; and that on September 3 Mr. Sutton accepted the pardon, which is now in full force and effect. The order of the governor, after reciting that he had granted a conditional pardon to Mr. Sutton and that his action had been approved by the board, recites:

"Now, therefore, I, S. V. Stewart, Governor of the state of Montana, in view of the approval of my action by the state board of pardons do hereby declare and order the release of the said E. L. Sutton from the state prison of the state of Montana, on the following conditions:

"First. That the said E. L. Sutton shall make a written report to the secretary of the state board of pardons, at least every thirty days, stating his postoffice address, the nature of the work in which he is engaged, the name of his employer if he be employed steadily by one employer, and such other information as may at any time be required of him by the board or any member thereof.

"Second. That he shall not at any time be guilty of a breach of any of the laws of the state of Montana or of any of the conditions of this pardon. And further that he shall abstain from the use of intoxicating liquors in any manner or form whatsoever during the term and life of this conditional pardon, and that he shall refrain from frequenting saloons or other places where intoxicating liquors are kept or sold.

"Third. That he shall immediately proceed to look after, provide for and care of his wife and children.

"Fourth. That he shall, during the remainder of his term of service, be at all times in the legal custody and control of the state board of prison commissioners, and subject at any time to be returned to the state prison for a breach of any of the conditions of this conditional pardon or for other good and sufficient cause to the state board of pardons appearing. And a written order of the state board of pardons, certified by the state prison warden in charge of the state prison, shall be a sufficient warrant to any officer to retake and return said prisoner to actual custody.

"This conditional pardon having been approved by the state board of pardons, it shall immediately effect the release of the said E. L. Sutton under the conditions named, but before leaving the custody of said prison, the said Sutton shall signify in writ-

ing his acceptance of the conditional pardon and of all the conditions imposed thereby and therein."

Since, under section 6393 of the Revised Codes, the certified [1] copy of the record of conviction is made conclusive evidence, and this court is left no discretion but to proceed under section 6410, the convicted attorney and counselor is not entitled to notice by citation or other process. It is his bounden duty to know that the legal consequence of his final conviction is his disbarment. (*In re Bloor*, 21 Mont. 49, 52 Pac. 779.) Of course the conviction must be final by reason of acquiescence by the convict in the judgment of the trial court, or by affirmance by this court. It would manifestly be an injustice to him for this court to disbar or suspend him from office, until the finality of the judgment has been made apparent; otherwise, though by the subsequent proceedings in the criminal prosecution he might be found not guilty and be awarded full and complete vindication and his innocence of any wrong be fully established, in the end the order of disbarment or suspension would stand of record. In the *Bloor Case* the judgment of conviction had become final by affirmance by this court. (*State* v. *Bloor*, 20 Mont. 574, 52 Pac. 611.) In this case, the record not disclosing what was the condition in the case of *State* v. *Sutton*, we deemed it proper to issue the citation in order to permit it to be disclosed.

We shall not stop to investigate the question whether the crime [2] of forgery involves moral turpitude. That it does is so clearly apparent that argument to the contrary is not permissible.

By applying to the governor for a pardon and obtaining it, [3] Mr. Sutton acquiesced in the judgment of conviction. For the purpose of this proceeding, therefore, that judgment became final. In his brief Mr. Sutton assumes the position that the effect of the pardon is not only to release him from the [4] punishment inflicted by the judgment of conviction, but that it obliterates, in legal contemplation, the offense itself and restores him to the same standing in the community as if the

offense had never been committed. In support of this argument he cites: *Edwards* v. *Commonwealth*, 78 Va. 39, 49 Am. Rep. 377; *State* v. *Page*, 60 Kan. 664, 57 Pac. 514; *Carlisle* v. *United States*, 16 Wall. 147, 21 L. Ed. 426; *Osborn* v. *United States*, 91 U. S. 474, 23 L. Ed. 388. He also cites and relies with confidence upon the case of *Scott* v. *State*, 6 Tex. Civ. App. 343, 25 S. W. 337, to the point that though the statute makes it the duty of the court to strike from the rolls the name of an attorney upon proof of his conviction of a felony, if it is made to appear that the offender has been pardoned, the record of the judgment of conviction has wholly lost its probative value because it has been wiped out by the pardon. Hence he argues, the judgment having been canceled by his pardon by the governor, all its force as a conviction for a felony has been taken away, and it no longer furnishes the basis for a disbarment proceeding. We have no fault to find with anything said in any of these cases. It will be noted, however, that all of them, except *Osborn* v. *United States*, discuss the force and effect of an unconditional pardon. In this case the court had under consideration the effect of a pardon of Osborn by the President, of the offense of participating in the rebellion on account of which his property had been condemned and ordered to be sold under the confiscation laws of 1862. (Act July 17, 1862, Chap. 195, sec. 7, 12 Stat. 591.) Two conditions were attached to the pardon: First, that Osborn should pay all the costs of the proceeding pending against his person or property before his acceptance of the pardon; and, second, that he should not, by virtue thereof, claim any property, or the proceeds of any property, which had been sold by decree of a court under the confiscation laws of the United States. There was no question that the first condition had been fulfilled. The question was whether an attempt by Osborn to assert a claim to the proceeds of his property, as against the officers of the court who had misappropriated them, was a violation of the second condition. The court, speaking through Mr. Justice Field, held that it was not. In the opinion it was said: "The pardon of that offense necessarily carried with it the

release of the penalty attached to its commission, so far as such was in the power of the government, unless specially restrained by exceptions embraced in the instrument itself. It is of the very essence of a pardon that it relieves the offender from the consequences of his offense." This passage discloses that the court was of the opinion that, inasmuch as the first condition imposed by the pardon, which was precedent, had been performed, the pardon had become unconditionally operative for all purposes, except so far as restrained by the second condition, which was in legal effect a limitation as to its operative effect, and not a condition for the violation of which the pardon would become nugatory.

*Scott* v. *State* was a disbarment proceeding. Inasmuch as it appeared that the offender had been granted an unconditional pardon prior to the institution of the proceeding, the court held that the record of conviction, having been wiped out by the pardon, could not be looked to as evidence of a conviction of a felony necessary to support a judgment of disbarment under the statute. A conditional pardon, such as was granted by the governor in this case, cannot, in the nature of things, have such effect.

Besides the other conditions which Mr. Sutton must observe, he is required during the remainder of his term of service to remain in the custody and control of the state board of prison commissioners and be subject to be returned to the prison for a breach of any of the conditions, or for any other cause appearing to the state board of pardons to be good and sufficient.

Under the Constitution (Art. VII, sec. 9) and the statute (Rev. Codes, sec. 9556), the governor is authorized to impose conditions without restriction, so long as they are not illegal, immoral or impossible of performance. (*Fuller* v. *State*, 122 Ala. 32, 82 Am. St. Rep. 1, 45 L. R. A. 502, 26 South. 146; *Ex parte Marks*, 64 Cal. 29, 49 Am. Rep. 684, 28 Pac. 109; *In the Matter of Convicts*, 73 Vt. 414, 51 Atl. 10; *State* v. *Peters*, 43 Ohio St. 629, 4 N. E. 81; *Arthur* v. *Craig*, 48 Iowa, 264, 30 Am. Rep. 395.)

The act of the governor, as expressed in the order *supra,* though designated by him as a pardon, is closely assimilated to a parole, which he also has the authority to grant under certain restrictions. (Rev. Codes, secs. 9573–9575.) A parole does not operate to wipe out the judgment of conviction but merely suspends its operation by remitting, for the time being, the confinement and hard labor, until the end of the term, or until an unconditional pardon is granted. Until one of these events occurs, the offender is subject, upon a violation of any of the conditions, to be taken into custody and be held to suffer actual imprisonment as though the parole had not been granted. The same rule applies here. The imposition of the conditions implies the existence of a judgment; that it is just and regular; [5] that its execution has been by the act of the governor merely deferred to a future time, to be determined by Mr. Sutton's failure to perform the obligations he has assumed by his acceptance of it. Whenever he transgresses any of the restraints imposed upon him, he will occupy the position of an escaped convict and be subject to be dealt with accordingly. (*Fuller* v. *State, supra.*) This was the rule at common law (Bacon's Abr., Title "Pardon," E), and it has been recognized and adopted generally in this country. (*In the Matter of Convicts, supra; Arthur* v. *Craig, supra; Fuller* v. *State, supra; State* v. *Wolfer,* 53 Minn. 135, 39 Am. Rep. 582, 19 L. R. A. 783, 54 N. W. 1065; *Kennedy's Case,* 135 Mass. 48.) The pardon [6] being in the nature of a deed, it must be accepted. (*United States* v. *Wilson,* 7 Pet. 150, 8 L. Ed. 640.) Having been accepted, all the conditions of it not open to any of the objections above noted become binding. (*In re Ross,* 140 U. S. 453, 35 L. Ed. 581, 11 Sup. Ct. Rep. 897.)

For the purpose of this proceeding, therefore, the judgment in *State* v. *Sutton* is a valid, subsisting judgment, notwithstanding the order of the governor. It is true that, upon expiration of Sutton's term of service, the pardon will become absolute. At least this seems to have been the purpose of the governor. But this does not relieve this court from the duty imposed upon it

by the statute. It is left without discretion, and hence must make the order of disbarment. To give the pardon the effect which Mr. Sutton insists should be accorded to it might lead to consequences which would prove embarrassing. If Mr. Sutton should transgress any of the restraints imposed upon him, or his conduct, though not directly violative of any of them, should, in the opinion of the board of pardons, be such as to justify his return to prison, the pardon would be annulled. The result would be that Mr. Sutton would be a member of the bar in good standing, notwithstanding his status as such would, in the eye of the law, have ceased to exist.

Let judgment be entered in accordance with section 6420 of the Revised Codes.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.